UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JASON W. JONES,                                          Case No. 1:12-cv-224

        Plaintiff,                                  Barrett, J.
                                                        Bowman, M.J.

      v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Jason W. Jones filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff filed an application for disability insurance benefits ("DIB") in April 2008, alleging a disability onset date of March 1, 2006 due to a shoulder impairment and a gastrointestinal impairment. After his application was denied initially and on reconsideration, he requested a hearing de novo before an Administrative Law Judge ("ALJ"). On June 30, 2010, an evidentiary hearing was held before ALJ Deborah Smith. Plaintiff appeared with counsel and provided testimony; a vocational expert also

provided testimony.  (Tr. 25-53).  On July 14, 2010, the ALJ denied Plaintiff's application in a written decision.  (Tr. 14-19).

Plaintiff's last insured date was December 31, 2006; therefore, he must show that he became disabled on or before that date.  The record reflects that Plaintiff was 30 years old on the date he was last insured, and that he had performed no substantial gainful activity between his claimed onset date in March, 2006 through the date last insured.  (Tr. 17).  Although Plaintiff argued that his impairments met or equaled a Listed Impairment, the ALJ determined that Plaintiff had no severe impairments at all, and therefore that Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff contends that the ALJ erred: (1) by failing to find that Plaintiff's shoulder and gastrointestinal impairments were "severe" and by failing to find that Plaintiff's gastrointestinal symptoms met or equaled a Listing 5.08; and (2) by failing to review Plaintiff's application for SSI benefits.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  See 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is

2

available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can

3

still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

In this case, the ALJ did not move beyond Step 2 of the sequential analysis concerning Plaintiff's DIB claim.

## B.  Plaintiff's Statement of Errors

Plaintiff first asserts error in the ALJ's findings at Step 2 of the sequential analysis.  Plaintiff argues that his shoulder and gastrointestinal symptoms both should have been considered to be "severe" impairments; in fact, Plaintiff contends that his digestive issues were so severe as to meet or equal Listing 5.08 at Step 3, thereby entitling him to a presumption of disability.  Plaintiff's second claim of error is procedural, and is based upon the ALJ's failure to consider his later-filed SSI claim.

### 1.  Whether Plaintiff's Impairments Were "Severe"

For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability.  See 42 U.S.C. §423(d)(1)(A); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").  In this case, the ALJ determined that Plaintiff had no severe impairments at all, notwithstanding his history of treatment for right shoulder problems and for gastrointestinal bleeding.  Pointing to medical records, Plaintiff takes issue with the ALJ's finding that "there are no medical signs or

4

laboratory findings to substantiate the existence of a medically determinable impairment during the relevant time period from the claimant's alleged onset date of disability through his date last insured."  (Tr. 18).  Plaintiff argues that both his shoulder and gastrointestinal impairments were "severe," and should have resulted in progression of the Sequential Analysis beyond Step 2, and ultimately, to a determination that he was disabled.

### a. Shoulder Impairment

Countering the ALJ's reference to "no medical signs or laboratory findings" to substantiate his shoulder impairment, Plaintiff points to records that demonstrate a history of recurrent dislocation of his right shoulder.  In fact, notwithstanding the ALJ's comment regarding the absence of "signs or laboratory findings," the ALJ acknowledged clinical records that documented Plaintiff's shoulder history since the age of 13.  (Tr. 17).  Plaintiff points out that: (1) he underwent a short course of physical therapy and had a consultation at the Cleveland Clinic in 2002, several years prior to his claimed disability onset date; (2) his primary care physician's records reflect regular follow up visits for treatment of "chronic shoulder pain" during the relevant timeframe; and (3) he was ultimately referred (in 2009, long after the expiration of his insured status) for pain management.  Based upon the referenced documentation from 2002, 2006, and 2009, Plaintiff argues that his shoulder impairment should have been considered to be "severe" at Step 2 of the sequential process.

There is little question that Plaintiff's propensity to dislocate his right shoulder, resulting in shoulder pain, lasted, or was expected to last, more than 12 months.  However, the ALJ reasonably focused on Plaintiff's medical records beginning with the

claimed onset of disability in March 2006, through the date that Plaintiff was last insured in December 2006.  Although those records reflect "chronic" shoulder pain (as do Plaintiff's records from years preceding and following 2006), the records also consistently and repeatedly reflect his treating physician's assessment of his shoulder as "stable" from February through December 2006, with Plaintiff reporting that he "feels well."  (*See* Tr. 349-359).  Plaintiff's brief citation to the entirety of his primary care treatment records, dating from 2003 through 2008 (*see* Doc. 13 at 2, citing Tr. 333 to 378), is not particularly helpful to this Court.

Substantial evidence supports the ALJ's conclusion that records during the most critical time period "show that the claimant consistently reported that he felt well and that Dr. Sharma repeatedly indicated that his shoulder was stable."  (Tr. 17, citing relevant records).  To constitute a "severe" impairment, Plaintiff must demonstrate not only that his claimed impairment was of sufficient duration, but also that the alleged impairment "more than minimally" affected his ability to work.  Such evidence appears to be absent during the relevant time period, given the undersigned's review of all of Dr. Sharma's 2006 records.

In addition to his failure to cite to any specific records that contradict the ALJ's assessment, Plaintiff's reliance upon 2009 records that he was referred for pain management approximately two and a half years *after* the expiration of his insured status (*see* Tr. 630-646) is misguided.  Such records are not evidence of the existence of a severe impairment *prior* to the expiration of Plaintiff's insured status.

Last, the ALJ alternatively found that "even if the claimant's shoulder problem [was] 'severe', the vocational expert named jobs existing in significant numbers in the

national economy even if the claimant were limited to lifting and carrying twenty pounds, occasional push/pull, and no overhead reaching." (Tr. 18). The transcript confirms the accuracy of the ALJ's description of the vocational expert's testimony, which Plaintiff does not challenge. (Tr. 48-49). Therefore, to the extent that the ALJ committed any error, the alleged error was harmless because even if his shoulder impairment had been categorized as a "severe" impairment, it would not have resulted in a finding of disability.

### b. Gastrointestinal Impairment

Plaintiff's arguments concerning the level of severity of his gastrointestinal impairment fail for similar reasons. The ALJ accurately summarized Plaintiff's history of gastrointestinal problems, which appear to have begun in 2006, but worsened long after the expiration of Plaintiff's insured status:

> [T]he claimant was admitted on May 4, 2006, for gastrointestinal bleeding and acute anemia secondary to blood loss. He underwent an upper and lower endoscopy which showed a gastric ulcer with erosion and duodentis but no active bleeding. The colonoscopy was unremarkable. He was discharged in stable condition on May 5, 2006, with prescriptions for Protonix and Carafate. There is no indication that the claimant had any further problems until March 2008 and October 2008 when he was again admitted for gastrointestinal bleeding. These last two hospital admissions were long after his December 31, 2006 date last insured.

(Tr. 17-18).

Plaintiff argues that the ALJ should have found his gastrointestinal impairment to be "severe" based upon his May 2006 records, because those records objectively demonstrated that he was then suffering from mild colitis (Tr. 251), mild diffuse gastritis, and a small ulcer. (Tr. 255). The same records showed that although Plaintiff was

briefly admitted to ICU and given a blood transfusion, he had no active bleeding at the time of admission, and the prior blood loss was assumed to be from his ulcer.

Substantial evidence supports the ALJ's conclusion that these "mild" findings of digestive disease in 2006 were insufficient to demonstrate the existence of a "severe" digestive impairment during the critical time period.  Plaintiff points to no evidence that any physician in 2006 expected that Plaintiff's digestive problems would be expected to last more than 12 continuous months, or that his mild gastritis or ulcer (for which treatment was provided) would more than "minimally" affect his work ability.  Instead, the 2006 records reflect only a single acute episode which, with outpatient treatment, was expected to resolve.

In short, while there is no question that Plaintiff's overnight hospitalization in May of 2006 was the result of acute and serious symptoms, Plaintiff fails to point to any evidence that he experienced severe gastrointestinal symptoms for a continuous 12 month period.  Consistent with the medical records, he testified that he was not again treated for gastrointestinal complaints until 2008, long after his insured status had expired.  (Tr. 38).  He did not testify to any gastrointestinal symptoms that would affect his ability to work during the relevant time period in 2006; instead, he referenced only fatigue, his inability to concentrate, and his shoulder issues as the reason he felt he could not work at that time.  (Tr. 37).  He testified that he attended truck driving school and obtained his CDL license in 2006, but was unable to find a job.  (Tr. 38-39).

Plaintiff now argues that the ALJ additionally erred by failing to conclude that his gastrointestinal issues were so severe that they met or equaled Listing 5.08.  A conclusion that Plaintiff suffered from a "severe" impairment at Step 2 is a prerequisite

8

to determining whether Plaintiff's impairment met or equaled a Listed impairment at Step 3. Because the Court finds substantial evidence to support the ALJ's conclusion that Plaintiff's gastrointestinal impairment was not "severe" during the relevant disability period, it is unnecessary to proceed to Plaintiff's additional argument that his impairment met or equaled Listing 5.08.

Nevertheless, in the interest of providing a complete record to any reviewing court, the undersigned further concludes that Plaintiff did not meet the referenced listing. Listing 5.08 provides for a presumption of disability when a claimant proves "[w]eight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6–month period." Here, Plaintiff points only to his alleged weight loss in 2006, resulting in a BMI of less than 17.50. However, there is no evidence that such weight was attributable to a severe digestive disorder despite "continuing treatment as prescribed."

At his evidentiary hearing, Plaintiff attributed his weight loss to a lack of appetite due to a general feeling of being "sick." (Tr. 42). Indeed, 2006 records from his primary care physician reflect a wide variety of complaints, including psychological ailments. At the hearing, Plaintiff affirmatively linked his general feeling of "illness" with stomach problems and shoulder pain only after pointed questioning by his attorney. Although Plaintiff responded affirmatively to his attorney's inquiry by vaguely referring to "a couple episodes" of stomach problems between 2006 and 2008, he qualified his limited affirmative response by noting that his problems were "[n]ot as frequent as now," with most of his 2006 complaints being shoulder pain. (Tr. 42-44). Again, no medical

9

evidence supports any ongoing, severe gastrointestinal issues prior to the expiration of his insured status in 2006. *Accord Carlson v. Astrue*, 604 F.3d 589 (8th Cir. 2010)(plaintiff failed to prove weight loss attributable to gastrointestinal disorder or equivalent, as opposed to diabetes and poor nutrition).

The general criteria applicable to Listing 5.08 explains that the type of documentation ordinarily required to show the existence of a "severe" digestive disorder, such as:

> appropriate medically acceptable imaging studies and reports of endoscopy, operations, and pathology, as appropriate to each listing, to document the severity and duration of your digestive disorder. Medically acceptable imaging includes, but is not limited to, x-ray imaging, sonography, computerized axial tomography (CAT scan), magnetic resonance imaging (MRI), and radionuclide scans. Appropriate means that the technique used is the proper one to support the evaluation and diagnosis of the disorder. The findings required by these listings must occur *within the period we are considering in connection with your application or continuing disability review.*

20 C.F.R. § 404 App. 1, Listing §5.00(B)(emphasis added).  The Listing goes on to explain: "Digestive disorders frequently respond to medical or surgical treatment; therefore, we generally consider the severity and duration of these disorders within the context of prescribed treatment."  *Id.* at §5.00(C)(1).  The introduction to Listing 5.08 sets forth what is meant by the requirement that a claimant demonstrate weight loss "despite continuing treatment."  "In addition to the impairments specifically mentioned in these listing, other digestive disorders, such as esophageal stricture, pancreatic insufficiency, and malabsorption, may result in significant weight loss.  We evaluate weight loss due to any digestive disorder under 5.08 by using the Body Mass Index."  *Id.* at 5.08(G)(1).

It is Plaintiff's burden to prove that he satisfies all elements of a Listing.  *See generally Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  On the record presented, Plaintiff appears to have had no treatment for any diagnosed gastrointestinal disorder between the period shortly after his acute gastrointestinal bleed in 2006 and 2008.  Plaintiff's lack of treatment would make it extremely difficult for him to satisfy the requirement that his weight loss be "despite continuing treatment."  Even if Plaintiff's lack of treatment alone did not preclude him from satisfying Listing 5.08, Plaintiff has failed to present evidence of an ongoing digestive disorder that caused his weight loss prior to the expiration of his insured status in 2006.  *See Welton v. Comm'r of Soc. Sec. Admin.*, 2012 WL 43052 (N.D. Ohio, Jan. 9, 2012)(plaintiff failed to carry her burden of proving her gastritis met or equaled all elements of Listing 5.08, given lack of evidence concerning reasons for weight loss or impact of gastritis on plaintiff's RFC).

### 2. Plaintiff's SSI Application Date

As discussed, the ALJ reviewed only the merits of Plaintiff's DIB application, dated April 15, 2008.  To prove his entitlement to DIB, Plaintiff was required to show that he became disabled prior to December 31, 2006.  Plaintiff's second claim of error is based upon the ALJ's refusal to review his SSI claim.  Eligibility for SSI does not expire when a claimant's insured status for DIB expires, but benefits are payable only as of the date of a claimant's application.

Plaintiff filed a written SSI application on June 29, 2010, the day before his evidentiary hearing.  Pursuant to applicable regulations, the district office forwarded that application to the ALJ, so that she could determine whether it was appropriate to

escalate the SSI claim and jointly address both Plaintiff's DIB and SSI claims at the same hearing. However, the ALJ determined that joining the two claims for review at the evidentiary hearing was not appropriate. Because Plaintiff's SSI application had been so recently submitted and was not fully developed, the ALJ held that the claim should be reviewed initially and, if necessary, on reconsideration, by the administrative agency. (Tr. 14). After rejecting Plaintiff's contention that an earlier filing date than the written application date of June 29, 2010 should be considered, the ALJ returned the SSI claim to the agency. Upon review, Plaintiff's SSI claim was approved at the agency level as of the filing date of his written application – June 29, 2010.[1]

In this appeal, Plaintiff seeks to retroactively back-date review of his SSI benefits to a date more than two years earlier, to April 15, 2008, the date of his DIB application. He argues that when he originally presented to his Social Security field office in April, 2008, employees helped him complete his DIB application and discussed the possibility of Supplemental Security Income, but advised him that their "system was down" and that he would have to apply for SSI another day. Plaintiff alleges that he was never contacted by the field office to follow up, and for that reason did not file his SSI application until the day before his evidentiary hearing, on June 29, 2010.

In her decision, the ALJ refused to apply a "protective" filing date for Plaintiff's SSI application of April 15, 2008. After noting that a DIB application ordinarily does not act as a protective filing date for SSI benefits, the ALJ expressed some skepticism

---

[1]As discussed above, the medical evidence reflects that Plaintiff's conditions substantially worsened over time, beginning in 2009. Given this Court's determination that substantial evidence supports the ALJ's determination that Plaintiff was not under a disability on April 15, 2008, the ALJ's refusal to consider Plaintiff's SSI application as of the same date might have been argued to be – at most – harmless error. However, the record was never reviewed to determine whether Plaintiff may have become disabled on any date between April 15, 2008 and the date of his written SSI application on June 29, 2010.

concerning Plaintiff's claim that his alleged oral inquiry on April 15, 2008 should be considered as his SSI filing date. "If his Title XVI claim was allegedly 'protectively filed' on April 15, 2008, then it is unclear why the District Office, [t]he DDS and the claimant's attorney never had the claimant pursue or question his SSI filing until June 29, 2010, one day before his administrative hearing on his Title II claim." (Tr. 14). Criticizing Plaintiff's counsel for her belated submission of evidence and inadequate preparation for the hearing, the ALJ added: "It is also not clear why the claimant only went into the District Office inquiring about an SSI application one day before his hearing on his Title II claim, when counsel had been retained on April 20, 2010." (Tr. 18). The ALJ declined to review the SSI claim at all, instead dismissing it back to the SSA "so that he can get an initial determination on his SSI claim with all his appeal rights if that claim is denied." [2] (Tr. 19).

Plaintiff argues that under SSA regulations, the ALJ should have found a protective filing date for his SSI application of April 15, 2008. Under 20 C.F.R. §416.350(b), if an applicant "does not file an application for SSI on a prescribed form when SSI is explained to him or her, [the agency] will treat his or her filing of an application for [DIB] benefits as an oral inquiry about SSI, and the date of the [DIB] application form may be used to establish the SSI application date if the requirements of §416.345(d) and (e) are met." One of the stated requirements is that the claimant must file "an application on a prescribed form within 60 days after the date of the notice" the

---

[2]It is unclear whether Plaintiff presented his "protected filing date" claim to the agency during initial review of his SSI claim or on reconsideration, after the ALJ declined to review that claim at the June 30, 2010 evidentiary hearing. Because the ALJ did not join the claims, arguably the issue could have and should have been presented in the separate administrative proceeding in which the SSI claim was reviewed, rather than in the context of the appeal of the ALJ's denial of DIB benefits. However, the Commissioner does not raise this jurisdictional issue.

agency sends to the claimant, informing him of the need to file a written SSI application. 20 C.F.R. §416.345(d).

On the facts presented, Plaintiff alleges that the field office orally informed him that their system was "down" and that he would have to file his SSI application another time.  Nevertheless, he waited more than two years, until the day before his hearing, to file that application.  He argues that he should be forgiven for failing to file an SSI application within "60 days after the date of the notice" of his need to file a written application, because the regulation indicates that the agency will send the claimant a written notice informing him of his need to file the SSI application.  There is no dispute that the agency never sent Plaintiff a written notice.

Essentially, Plaintiff is seeking to estop the agency from holding that his application date was June 29, 2010, based upon the alleged negligence of the field office in failing to send him a written notice of his need to timely file an SSI application. Plaintiff's argument is virtually identical to that made by the claimant in *Colbert v. Comm'r of Soc. Sec.,* 2009 WL 2059907, 143 Soc.Sec.Rep. Serv. 638 (S.D. Ohio, July 9, 2009), and the undersigned agrees with and adopts the analysis of U.S. District Judge Frost in that case:

> Colbert argues generally that she "should not suffer" because of the errors or omissions of Social Security employees, and that she should be considered to have made a constructive application for SSI benefits on January 21, 2004.  This is equivalent to an argument that the Commissioner, because of the actions of Social Security personnel, should be estopped from denying that Colbert applied for SSI benefits. However, the Court has no power to entertain such an argument, as it is "no more authorized to overlook the valid regulation requiring that applications be in writing than it is to overlook any other valid requirement for the receipt of benefits." *Schweiker v. Hanse*, 450 U.S. 785, 790 (1981)….Accordingly, the Court cannot find that the Commissioner is

estopped from denying that Colbert applied for SSI benefits on January 21, 2004, or hold that her oral inquiry alone satisfies §416.345.

*Id.* at *15 (additional citations omitted).  In short, even assuming that this Court has jurisdiction in this appeal of the denial of Plaintiff's DIB application, to review the ALJ's decision not to review Plaintiff's later-filed SSI claim in the same evidentiary hearing, Plaintiff's estoppel claim is without legal merit.

### III.  Conclusion and Recommendation

For the reasons discussed, the ALJ committed no reversible error.  Therefore, **IT IS RECOMMENDED THAT** the Commissioner's decision to deny Plaintiff DIB benefits be **AFFIRMED** and that this case be closed.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JASON W. JONES,                                        Case No. 1:12-cv-224

        Plaintiff,                                        Barrett, J.
                                                        Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

16